### 70300. NALLEY v. HARRIS.
(336 SE2d 822)

McMURRAY, Presiding Judge.
Plaintiff Harris brought this suit to recover earnest money which he paid pursuant to a residential real estate sales contract. The seller, defendant Nalley, counterclaimed for damages alleging plaintiff breached the contract. The trial court summarily awarded judgment to plaintiff and defendant appealed.

The sales contract was executed on February 21, 1983. The closing was to take place on or before May 3, 1983. It was stipulated that time was of the essence. The contract provided, in pertinent part: "This contract is made conditioned upon Purchaser obtaining a loan, or a commitment for a loan, in the principal amount of not less than $185,000.00 of the purchase price . . . said loan to be paid in equal monthly installments of principal and interest over a term of not less than 30 years at an interest rate of not more than 13% per annum on the unpaid principal balance. Purchaser agrees to promptly make application and pursue said application with reasonable diligence, to execute all papers and perform all other actions necessary to obtain said loan and to accept such a loan if it is obtainable by the Purchaser . . ."

The contract also provided: "This contract is made contingent upon a STRUCTURAL and/or MECHANICAL inspection of ALL IMPROVEMENTS on subject property by qualified inspector(s) of Purchaser's choice . . ." Following the inspection, the purchaser was to furnish a list of items to be corrected by the seller to "the inspector's or the purchaser's satisfaction prior to closing . . ." The property was inspected by J. C. Lash. Thereafter, plaintiff gave defendant a list of the items which were to be corrected.

Prior to closing, plaintiff wrote to the seller as follows: "You and the realtors know how concerned I am about the extensive water problem affecting the property . . . I have recently seen standing water in the basement after a fairly light rain. This was even after some very recent additional corrective work on the gutters and front yard . . . I have no way to be reasonably sure this problem will be

satisfactorily corrected. I have also been unable to find an acceptable lender who will extend credit to me on the terms set forth in the sales contract. While I fully intend to follow the provisions of the sales contract, these problems make it highly unlikely that closing will take place on May 3, 1983. In that regard, I suggest we call the contract at an end . . ."

Thereafter, on May 4, 1983, plaintiff demanded the return of the earnest money in a letter to the real estate broker. The letter read, in part: "I arranged with Mr. Grayson, my attorney, and Mr. Jackson, my contractor, to visit the premises with me for the purpose of final inspection on May 2nd. Mr. Nalley, the seller, has not completed the improvements as stipulated, and therefore, I could not close on the house because these important terms of the contract had not been fulfilled by Mr. Nalley. Further, I have contacted a number of lenders in the Atlanta area to seek financing according to the terms of the contract . . . I have been unable to secure financing according to these terms and have received written communication from three different lenders to that effect."

The earnest money was not returned to plaintiff and this suit was commenced. Following discovery, plaintiff moved for summary judgment. In support of his motion, plaintiff submitted the affidavits of three bankers. The bankers were the representatives of three banking institutions. They averred that during March and April 1983 plaintiff sought financing for the purchase of a home with their banks; that their banks did not offer a 30-year fixed rate mortgage at 13% on a loan of $185,000; that plaintiff cooperated with the banks while negotiating the loan; and that plaintiff's inability to obtain the loan was not due to a lack of diligence.

Defendant submitted his own affidavit in opposition to plaintiff's summary judgment motion. In his affidavit, defendant averred that he agreed to have numerous modifications made to the property at his expense; that "even as inspections and repair work were progressing . . . Mr. Harris was seeking a way to avoid his contractual obligation . . . and requested that the contract be cancelled . . ."; that he adhered to the terms of the contract; and that he lost opportunities to sell the property because it was not being marketed during the contractual period. Defendant concluded: "At all times I proceeded on Mr. Harris' assurances that all that was necessary to conclude the contract was that I make the necessary modifications to the property, which I did." *Held*:

1. In granting plaintiff's motion for summary judgment, the trial court determined that "the sales contract between plaintiff and defendant is void for lack of mutuality due to plaintiff being the sole judge of his satisfaction regarding the repairs made." We would be inclined to agree with the trial court's rationale if the parties stipu-

lated that the corrective work was to be performed to the satisfaction of the purchaser only. See *Stone Mountain Properties, Ltd. v. Helmer*, 139 Ga. App. 865, 867 (229 SE2d 779); *Giacalone v. Tuggle*, 141 Ga. App. 123, 124 (4) (232 SE2d 589). However, a review of the contract makes it clear that the seller was to correct the items on the list "to the inspector's or the purchaser's satisfaction . . ." A contract does not lack mutuality where the satisfaction of a *third person* is made a condition precedent to the payment of the purchase price. 17 AmJur2d, Contracts, § 369; *State Hwy. Dept. of Ga. v. MacDougald Constr. Co.*, 189 Ga. 490 (2) (6 SE2d 570). This is true even though the third person is employed or selected by the party contesting performance. See generally *State Hwy. Dept. of Ga. v. MacDougald Constr. Co.*, supra. Since the record fails to disclose whether plaintiff's inspector (presumably J. C. Lash) was satisfied with the corrective work, plaintiff was not entitled to the grant of summary judgment upon a discretionary contingency theory.

2. Nonetheless, we agree with the trial court that plaintiff was entitled to the entry of summary judgment in his favor. Accordingly, we affirm the judgment of the trial court. "It is fundamental that a judgment of a trial court which is right will be affirmed on appeal even though the trial judge in rendering his judgment may have assigned a wrong reason therefor." *Sims T.V. v. Fireman's Fund Ins. Co.*, 108 Ga. App. 41, 43 (131 SE2d 790).

The contract contained a condition precedent of obtaining a loan. Accordingly, plaintiff had an implied duty " 'to diligently seek to have (the financing) contingency take place.' *Warren v. Camp*, 232 Ga. 681, 682 (208 SE2d 489) (1974)." *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390). It was incumbent upon plaintiff to exercise that duty in good faith. *Brack v. Brownlee*, supra; *Koets, Inc. v. Benveniste*, 169 Ga. App. 352, 354 (2) (312 SE2d 846), aff'd, *Benveniste v. Koets, Inc.*, 252 Ga. 520 (314 SE2d 912). Via supporting affidavits, plaintiff demonstrated that his unsuccessful efforts to obtain a loan from any of three banking institutions were not the result of a lack of diligence. It appears from the affidavits that plaintiff did all he could do to obtain the specified financing. This evidence was uncontroverted. The mere fact that plaintiff did not make a formal application for a loan does not indicate a lack of diligence and good faith because plaintiff was informed that the specified loan was not available. Likewise, the fact that plaintiff could have obtained a large "swing loan" does not demonstrate that he could have obtained the requisite financing.

OCGA § 9-11-56 (e) provides: "When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a

genuine issue for trial." Since there was no evidence showing a lack of diligence and good faith on the part of plaintiff, the entry of summary judgment in favor of plaintiff was proper. *Koets, Inc. v. Benveniste*, 169 Ga. App. 352, supra.

3. Defendant contends summary judgment is not appropriate because issues of fact remain as to whether plaintiff waived the financing contingency and whether plaintiff was estopped from asserting that the financing contingency was not met. Assuming for the sake of argument that the evidence presents factual issues of waiver and estoppel, we must, nevertheless, disagree with defendant's contention. Affirmative defenses such as waiver and estoppel must be set forth in a defendant's answer. OCGA § 9-11-8. They "cannot be raised for the first time by affidavit filed in opposition to . . . a motion for summary judgment. [Cits.]" *London v. Bank of the South*, 170 Ga. App. 44, 46 (2) (315 SE2d 924). A review of the pleadings demonstrates that defendant did not assert the waiver and estoppel defenses affirmatively. Accordingly, these defenses could not be considered upon a review of plaintiff's summary judgment motion.

*Judgment affirmed. Banke, C. J., and Benham, J., concur.*

DECIDED OCTOBER 25, 1985.

*Michael D. Usry*, for appellant.
*John H. Moore, Don Wells*, for appellee.